1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TAPPS BREWING INC., a Washington
Corporation, and DANIEL McCLUNG and
ANDREA McCLUNG, Individually and as a
Marital Community,

                              Plaintiffs,

              v.

CITY OF SUMNER,

                              Defendant.

CASE NO. C06-5006RBL


ORDER GRANTING SUMMARY
JUDGMENT

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment on Federal Takings Issues (Dkt. 42-1) and Defendant's Motion for Summary Judgment on All Remaining Issues (Dkt. 45-1). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The history of this case spans more than nine years.  This dispute concerns a stormwater pipe upgrade requirement imposed by Defendant City of Sumner ("City") upon Plaintiffs Daniel and Andrea McClung ("Plaintiffs") in exchange for granting their development permit and waiving certain permit fees.  Plaintiff Tapps Brewing is no longer a part of the action.

On April 27, 1998, Plaintiffs Tapps Brewing and Daniel and Andrea McClung filed suit in Pierce County Superior Court against the City of Sumner.  Dkt. 5-2, at 3.  Plaintiffs' complaint

1  alleged that the City's General Facilities Charge ("GFC"), which was imposed on the Plaintiffs as
2  a condition of obtaining a building permit, was illegal under state law.  Dkt. 5-2, at 3.

3        On September 3, 1999, Plaintiffs filed a Motion for Summary Judgment.  Dkt. 5-3, at 12.
4  In their motion, they raised federal constitutional issues by citing a federal constitutional takings
5  case.  Dkt. 5-3, at 20.  The Pierce County Superior Court denied the motion.  Dkt. 7-8, at 11.

6        On November 1, 1999, Plaintiffs sought discretionary review of the court's decision. Dkt
7  7-9, at 1-2.  The Washington Court of Appeals denied the request.  Dkt. 7-9, at 6.  The Plaintiffs
8  filed a Motion to Modify the Commissioner's Ruling on April 11, 2000 (Dkt. 7-11, at 19), and
9  entered into a stipulation with the City permitting appellate review pursuant to RAP 2.3(b)(3)
10  (Dkt. 7-11, at 25).  Plaintiffs and City stipulated that the only issue before the Washington Court
11  of Appeals was the alleged violations of RCW 82.02.020 (prohibiting cities from imposing fees or
12  exactions that are disproportionate to the impact of the development). Dkt. 7-11, at 25.

13        On May 12, 2000, the Court of Appeals granted interlocutory review (Dkt. 7-11, at 27)
14  and on May 4, 2001, issued its decision (Dkt. 7-11, at 29).[1]  The Court of Appeals affirmed the
15  trial court's denial of Plaintiffs' Motion for Summary Judgment and remanded to the trial court
16  for further proceedings.  Dkt. 7-11, at 29.

17        On March 28, 2002, Plaintiff filed a Motion for Leave to Amend Complaint.  Dkt. 8-2, at
18  1.  The Proposed Amended Complaint would have clarified "the relief requested and more
19  explicitly state[d] the constitutional theories underlying plaintiffs' claims."  Dkt. 8-2, at 2.  The
20  trial court denied the motion on April 12, 2002.  Dkt. 8-2, at 18.

21        On June 12, 2002, trial commenced (Dkt. 8-4, at 17), and on October 30, 2002 the court
22  issued its decision (Dkt. 8-11, at 14).  The court concluded that the GFC that the City imposed on
23  Tapps Brewery, Inc., was invalid. Dkt. 8-11, at 11-12.  However, the court concluded that the
24  GFC imposed on the Plaintiffs was not invalid and dismissed their claims with prejudice.  Dkt. 8-
25  11, at 11-12.

26        Plaintiffs filed a Notice of Appeal with the Washington State Supreme Court.  Dkt. 8-11,

27
28       [1]*Tapps Brewing, Inc. v. City of Sumner,* 106 Wash. App. 79, 22 P.3d 280 (2001).

1    at 18.  The Washington Supreme Court declined review (Dkt. 9-2, at 20) and transferred the case

2    to the Court of Appeals (Dkt. 9-3, at 1).  The Court of Appeals issued an unpublished second

3    opinion, *Tapps II*,[2] on January 25, 2005, reversing and remanding for trial on Plaintiffs' challenge

4    to the pipe upgrade obligation's legality.  Dkt. 9-3, at 3.  The Court of Appeals also directed that

5    Plaintiffs be allowed to amend the complaint to clarify the constitutional claims.  Dkt. 9-3, at 20.

6         After Plaintiffs amended the complaint (9-4, at 5), the City removed the action to this

7    Court on January 6, 2006 (Dkt. 1-1).  This Court denied the Plaintiffs' Motion to Remand on

8    March 3, 2006.  Dkt. 18.

9         The facts giving rise to the procedural history are as follows.  In the early 1990's, the City

10   of Sumner experienced severe flooding.  Dkt. 48-1,at 2.  To solve this problem, the City adopted

11   a Stormwater Comprehensive Plan and accompanying stormwater regulations (Dkt. 48-1, at 2),

12   and the City began reconstructing its drainage system (48-1, at 3).  To pay for the construction,

13   the City adopted the Stormwater General Facility Charge ("GFC"), which is calculated using the

14   total amount of impervious surface of the property.  Dkt. 48-1, at 3.

15        Plaintiffs Andrea and Daniel McClung own four adjoining lots on the northwestern corner

16   of Valley and Main streets in the City of Sumner.  Dkt. 42-3, at 4.  At the time of purchase, a

17   gravel alley ran from east to west at the north end of the lots, separating them from Sumner High

18   School.  Dkt 42-3, at 4-5.  The Plaintiffs asked the City to vacate the alley, and the City agreed to

19   the vacation in March 1994.  Dkt. 42-3, at 6, 8.  The City retained a utility easement beneath the

20   alley for a stormwater pipe.  Dkt. 42-3, at 8-9.

21        In May of 1994, the Plaintiffs wished to remodel one of the lot houses into a Subway

22   sandwich shop and convert the vacated alley into a paved parking lot.  Dkt. 42-3, at 12-13.  They

23   submitted plans to the Sumner Community Development Review Committee on May 19, 1994.

24   Dkt. 42-3, at 12.  The City informed Plaintiffs that they would have to install a biofiltration swale

25   to filter the runoff from the new paved parking area.  42-3, at 14.

26        On September 29, 1995, the City sent Plaintiffs a letter retracting that requirement and

27

28        [2]*Tapps Brewing Co., Inc. v. McClung*, No.31959-4-II, 2005 WL 151932 (Jan. 25, 2005).

1  instead conditioning approval of the building permit on the installation of a new stormwater line.

2  Dkt. 48-3, at 111.  The letter stated, "[t]he existing storm drainage system serving this

3  development and the area along Main Street west of this site is inadequate according to the

4  Stormwater Comprehension Plan of 1992.  It states that a 24-inch pipeline is required."  Dkt. 48-

5  3, at 111.  This letter was issued as a result of a meeting between Daniel Rich, the Plaintiffs'

6  engineer, and Bill Shoemaker, the City's engineer.  Dkt. 8-6, at 5.

7       On October 10, 1995, Mr. Rich and Mr. Shoemaker again met to discuss the drainage

8  system.  Dkt. 8-6, at 7.  Mr. Shoemaker informed Mr. Rich that the City "dug up the existing

9  storm line near the catch basin . . . . [and] found that the line is only 12" for four feet, then

10 changes to 6"."  Dkt. 8-6, at 7.  Mr. Rich noted that the "existing 6" line is essentially worthless as

11 far as meeting the expected flow of 15.2 cfs."  Dkt. 8-6, at 7.  Mr. Shoemaker also indicated that

12 the "City would probably help with the cost."  Dkt. 8-6, at 7.

13      On December 27, 1995, the City sent another letter to Plaintiffs, explaining that the

14 existing stormwater line (at six inches in diameter) was deficient, and the Plaintiffs' property

15 required a twelve inch diameter pipe per the City's stormwater regulations.  Dkt. 48-3, at 114.

16 The City stated, "as a developer, you are required to install a 12-inch storm drain as a minimum."

17  Dkt. 48-3, at 114.  The City additionally informed the Plaintiffs through this letter that it wanted

18 them to install a twenty-four inch stormwater line instead of the required twelve-inch line.   Dkt.

19 48-3, at 114.   The City made this request because the City's Stormwater Comprehensive Plan

20 called for a pipe with enough capacity to handle a 100-year flood.  Dkt. 48-3, at 111.  The City

21 informed Plaintiffs that to "offset the cost of the oversizing to meet the City's Comprehensive

22 Plan requirements, the City will waive the storm drainage General Facilities Charge, permit fees,

23 plan review and inspection charges . . . . [amounting] to about $8,000 to $8,500."  Dkt. 48-3, at

24 114.  The City further stated, "[i]f you find this acceptable, please proceed with the revisions to

25 the Plan."  Dkt. 48-3, at 114.  Plaintiffs, assuming that "the terms set out in [the City's] letter of

26 December 27, 1995, as being the terms that [they were] required to comply with to obtain City

27 approval for [their project]," did not respond to the City's letter but instead proceeded to install a

28

1   twenty-four inch pipe.  Dkt. 51-3, at 2.

2      The pending motions before this Court are the Plaintiff's Motion for Summary Judgment

3 on Federal Takings Issues (Dkt. 42) and the Defendant's Motion for Summary Judgment on All

4 Remaining Claims.  (Dkt. 45).  As there are no material issues of fact, this Order addresses all

5 remaining claims: (1) violation of the Takings Provision of the Fifth Amendment of the U.S.

6 Constitution pursuant to 42 U.S.C. § 1983; (2) reasonable attorneys fees pursuant to 42 U.S.C. §

7 1988; (3) violation of Article 1, Section 16 of the Washington State Constitution; and (4)

8 violation of RCW §§ 35.92.025 and 82.02.020.

9                     **II.**   **DISCUSSION**

10   **A.**    **SUMMARY JUDGMENT STANDARD**

11      Summary judgment is proper only if the pleadings, depositions, answers to interrogatories,

12 and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

13 to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

14 P. 56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party

15 fails to make a sufficient showing on an essential element of a claim in the case on which the

16 nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

17 There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

18 rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith*

19 *Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant

20 probative evidence, not simply "some metaphysical doubt.").  *See also* Fed. R. Civ. P. 56(e).

21 Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting

22 the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.

23 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec.*

24 *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

25      The determination of the existence of a material fact is often a close question.  The court

26 must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

27 e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec.*

28

1   *Serv., Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of

2   the nonmoving party only when the facts specifically attested by that party contradict facts

3   specifically attested by the moving party.  The nonmoving party may not merely state that it will

4   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

5   to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

6   Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be

7   presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

8   **B.    JURISDICTION AND EXHAUSTION OF REMEDIES**

9       The City argues that Plaintiffs' Fifth Amendment takings claim is barred as a matter of

10  law because the Plaintiffs failed to adjudicate readily available state takings procedures and did

11  not exhaust their administrative remedies.  The City relies mainly on *Williamson County Reg'l*

12  *Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985) for the proposition that Plaintiffs'

13  claim is not ripe until (1) the government entity charged with implementing the regulations has

14  reached a final decision regarding the application of the regulations to the property at issue, and

15  (2) the Plaintiff has sought compensation through the procedures the state has provided for doing

16  so.  *Id.* at 194.  Therefore, the City argues, this Court is deprived of jurisdiction.  Dkt. 45-1, at

17  10.

18      Plaintiffs respond that *Williamson County* does not apply because *Williamson County*

19  does not require exhaustion of administrative remedies; rather it only requires that "the decision

20  which forms the basis for the owner's compensation claim be final."  Dkt. 50-1, at 9.  Further,

21  Plaintiffs argue that because their challenge is a facial challenge the *Williamson County* "ripeness"

22  issue does not apply.  Dkt. 50-1, at 10.  Plaintiffs state, "Exhaustion and ripeness do not apply in a

23  facial illegal exaction because the decision or action which effects the taking is complete and not

24  subject to ongoing regulatory proceedings."  Dkt. 50-1, at 10 (citing *Wash. Legal Found. v.*

25  *Legal Found. of Wash.*, 236 F.3d 1097, 1104 (9th Cir. 2001)).

26      While "[f]acial challenges are exempt from the first prong of the *Williamson* ripeness

27  analysis because a facial challenge by its nature does not involve a decision applying the statute or

28

ORDER
Page 6

regulation," Plaintiffs fail to recognize the dual nature of their claim.  *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003).  Plaintiffs' claim of an illegal upgrade installation requirement actually consists of two claims, each implicating separate legal authority: (1) the City's enforcement of Ordinance No. 1603 requiring a pipe upgrade from six to twelve inches, and (2) the City's offer to waive fees in consideration for installation of a twenty-four inch oversized pipe.

> **1.    *City's Enforcement of Ordinance No. 1603 – Pipe Upgrade Requirement from Six to Twelve Inches***

Sumner Municipal Ordinance No. 1603 expressly adopts the stormwater regulations contained in the "Surface Water Design Manual" published by the King County Department of Public Works Division of Surface Water Management.[3]  Dkt. 53-1, at 13, 73.  This manual establishes a twelve inch minimum pipe size requirement for new, permitted developments in the City of Sumner.  Dkt. 53-1, at 13; Dkt. 48-3, at 99-100.  The City states that "the City simply adopted the pipe size and design criteria," and imposed those criteria, which are "applicable to *any* new development in the City," on the Plaintiffs.  Dkt. 52, at 3.

Plaintiffs originally cast their claims as "as-applied" claims.  Dkt. 53-2, at 82.  Plaintiffs later attempt to re-cast their claims as facial or categorical taking claims.[4]  Dkt. 50-1, at 10, 19.  A claim is a facial challenge where the Plaintiffs' grievance arises solely from the existence of the statute itself; that is, there is no other basis for its challenge.  *Hacienda*, 353 F.3d at 656.   A facial challenge "by its nature does not involve a decision applying the statute or regulation."  *Id.* at 655 (citing *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)).  Conversely, an as-applied

---

[3] The ordinance is codified as Sumner Municipal Code § 13.48.590.

[4] If Plaintiffs' claims had been facial claims, Plaintiffs still would have had a heavy burden proving that a taking occurred.  Under a facial challenge to land use regulations, the landowner must demonstrate that the mere enactment of the regulation constitutes a taking.  *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 493 (1987); *Peste v. Mason County*, 133 Wn. App. 456, 471-72 (2006).  To prove that a statute on its face effects a taking by regulating the permissible uses of property, the landowner must show that the enactment of the regulation denies the owner of all economically viable use of the property.  *Keystone*, 480 U.S. at 495;  *Peste*, 133 Wn. App. at 472.  "A facial challenge in which the court determines a regulation denies all economically viable use of property should prove a rare occurrence."  *Guimont v. Clarke*, 121 Wn.2d 586, 606 (1993) (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1016-18 (1992) (internal quotations omitted).

ORDER
Page 7

1  challenge occurs where the ordinance alone is not the basis for the challenge. *Id.* at 656.

2          Here, Plaintiffs' claims, despite their attempt to re-cast them, are "as-applied" claims.

3  Plaintiffs' claims, in part, challenge the City's enforcement of Ordinance No. 1603 (requiring that

4  new permitted developments install twelve inch stormwater pipes, if needed) against them.[5]

5  Dkt. 51-1, at 2.  Therefore, Plaintiffs' challenge of the six to twelve inch pipe upgrade is an as-

6  applied challenge.

7          As-applied challenges must meet both prongs of the *Williamson County* ripeness analysis.

8  *Hacienda,* 353 F.3d. at 657.  First, Plaintiffs must have obtained a final decision from the entity

9  charged with implementing the regulation.  *Id.* at 657.  The Plaintiffs need not have resorted

10 beyond the initial decision maker to fulfill the final decision prong.  *Id.*  Here, the "finality"

11 requirement of *Williamson* does not preclude ripeness because, "[u]nlike *Williamson*, there is no

12 ongoing regulatory proceedings, so there is no occasion, as there was in *Williamson*, to await a

13 final decision." *Wash. Legal Found.*, 236 F.3d at 1104.  Further, the ordinance has already been

14 applied to the Plaintiffs, as the December 27, 1995 letter makes clear.  Dkt. 48-3, at 114.

15 Plaintiffs have met the first prong of the *Williamson County* test.

16         Second, under *Williamson County*, the Plaintiffs must have sought and been denied

17 compensation for a deprivation before a taking is complete.  *Hacienda*, 353 F.3d at 657.  The

18 City argues that Plaintiffs could have requested and received multiple administrative remedies, and

19 their failure to do so deprives them of the opportunity to seek relief from this Court.  Dkt. 45-1,

20 at 10.  The Plaintiffs argue that it "would be fundamentally unfair" to permit the government to

21 remove this action to federal court and then hold that the Plaintiffs' claim is unripe because the

22 Plaintiffs did not litigate in state court.  Dkt. 50-1, at 15.  This Court agrees.  The City fails to

23

24

25

26      [5] Plaintiffs state that the motion boils down to the question of whether it is "unconstitutional for a
     municipality to require a property owner to upgrade a publicly-owned stormwater pipe as a condition to granting a
     development permit where . . . the upgrade obligation is a unique, administratively determined, discretionary

27   imposition on a single property owner, rather than a generally applicable fee or charge that is legislatively
     mandated and calculated pursuant to a legislatively prescribed formula."  Dkt. 51-1, at 2.

28

1  show in the record any statute or code requiring[6] Plaintiffs to exhaust their administrative

2  remedies before filing their Fifth Amendment claims in Pierce County Superior Court.  Since

3  Plaintiffs have pursued an inverse condemnation action in Washington state court (Dkt. 5-2, at 3),

4  their takings claim regarding the six to twelve inch upgrade is ripe for adjudication in this Court.

5

6
      2.    *City's Offer to Waive Fees in Consideration for Installation of a Twenty-*
7          *Four Inch Pipe*

8          The City's separate authority for upgrading the pipe from twelve to twenty-four inches is

9  found in the City's "Stormwater Comprehensive Plan," adopted pursuant to Ordinance No. 1625.

10  Dkt. 48-1, at 70; Dkt. 48-2, at  96; Dkt. 48-2, at 130.  The Stormwater Comprehensive Plan

11  required the City to eventually install a twenty-four inch pipe at Lewis Avenue and Main Street to

12  serve the greater area surrounding Plaintiffs' property.  Dkt. 48-2, at 96; Dkt. 48-2, at 130.

13  Pursuant to Sumner Municipal Code § 13.48.610, when it is "deemed necessary by the city, as a

14  condition of development for the developer" to install a pipe that is "larger than required," that

15  developer shall "be eligible for a payback agreement" and the "storm drainage utility may

16  participate in the cost to construct said oversizing upon council approval."  Dkt. 53-1, at 13.

17          Again, the parties make the same *Williamson County* ripeness arguments to the City's

18  offer to waive fees in consideration for installation of a twenty-four inch pipe.  Dkt. 45-1, at 8-11;

19  Dkt. 50-1, at 9-10.  The parties' attempts to apply *Williamson County* creates an unusual dilemma

20  as the challenged ordinance, requiring the installation of a twenty-four inch pipe, applies only to

21  the City, not to the Plaintiffs as the developers.  Logically, the Plaintiffs cannot have obtained a

22  "final decision" of the application of the ordinance as required by *Williamson County* because the

23  ordinance was never applied to the Plaintiffs.  Since the *Williamson County* ripeness test does not

24  apply here, the Plaintiffs' takings claim regarding the twelve to twenty-four inch upgrade is ripe

25  for adjudication.  This opinion will now examine Plaintiffs' claims.

26  _____

27          [6] The City directs the Court's attention to several administrative remedies made available to the Plaintiffs
through the Sumner Municipal Code. Dkt. 49-1, at 9-12. However, these are remedies the Plaintiffs "could have
28  requested and received," not remedies they were required to exhaust before pursuing this action in state court.  Dkt.
49-1, at 9.

1

**C.   FIFTH AMENDMENT TO U.S. CONSTITUTION CLAIM PURSUANT TO 42 U.S.C. § 1983**

2

3        The final Clause of the Fifth Amendment provides: "nor shall private property be taken for

4   public use, without just compensation." U.S. Const. amend. V. The Fifth Amendment applies to

    the States as well as the Federal Government. *Chicago B. & Q.R. Co. v. Chicago*, 166 U.S. 226,
5
    239 (1897).
6
          "The text of the Fifth Amendment itself provides a basis for drawing a distinction between
7
    physical takings and regulatory takings." *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 233
8
    (2003) (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S.
9
10  302, 321-23(2002)). The Constitution requires payment of compensation whenever the

11  government acquires private property for public purpose, but the Constitution "contains no

12  comparable reference to regulations that prohibit a property owner from making certain uses of

13  her private property." *Id.* "The Fifth Amendment does not proscribe the taking of property; it

    proscribes taking without just compensation." *Williamson County*, 473 U.S. at 194.
14
          The two central questions to be answered in this action are as follows: (1) was there a
15
    taking, and (2) if so, was the Plaintiff justly compensated? *See, e.g.*, *Penn Cent. Co. v. City of*
16
    *New York*, 438 U.S. 104 (1978). As noted above, two distinct pipe upgrade obligations are at
17
    issue, each requiring a separate analysis.
18
                    *1.      Six to Twelve Inch Upgrade*
19
          Plaintiffs argue that this upgrade regulation[7] amounted to an uncompensated taking
20
    because while "government may regulate real estate development, it may not use regulation as a
21
    pretext to force individual owners to pay for general public improvements when the need for
22

─────────────────────

23        [7]  Despite the allegations of the Plaintiffs (Dkt. 50-1, at 6), the City possessed the requisite statutory
    authority to require Plaintiffs to upgrade their pipe from twelve inches to twenty-four inches. Sumner City
24  Ordinance No. 1603 authorizes the adoption of the "King County Surface Water Design Manual." Dkt. 53-1, at
    13, 73. This manual established twelve inches as the minimum pipe size requirement for any new development in
25  the City of Sumner. Dkt. 52, at 2; . Dkt. 53-1, at 13; Dkt. 48-3, at 99-100. Plaintiffs' development was new
    development, as they proposed to tear down the existing structure and replace that structure with a commercial
26  building. Dkt. 42-3, at 14. The City's engineer informed Plaintiffs that "as a developer" they were required to
    install a twelve inch storm pipe as a minimum. Dkt. 48-3, at 114. Although the City failed to mention in its letter
27  the pertinent regulation (Dkt. 48-3, at 114), this fact alone does not strip the City of its authority to impose
    development regulations.
28

ORDER
Page 10

1   improvements is not caused by those individuals who are forced to pay." Dkt. 42-1, at 11.

2   Therefore, Plaintiffs argue, the City may impose development exactions only when they are

3   reasonably related, both in nature and extent, to the negative impacts of their proposed

4   development pursuant to *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987), and *Dolan*

5   *v. City of Tigard*, 512 U.S. 374 (1994).

6       In *Nollan* and *Dolan*, the Supreme Court established a two-part test for judging when a

7   development exaction goes beyond the legitimate exercise of the government's police powers and

8   becomes an unconstitutional taking.  In *Nollan*, property owners appealed a decision of the

9   California Court of Appeals ruling that the California Coastal Commission could condition its

10   grant of permission to rebuild their house on their transfer to the public of an easement across

11   their beachfront property.  483 U.S. at 827.  The Supreme Court struck down the exaction as an

12   unconstitutional taking and held that an "essential nexus" must exist between the "legitimate state

13   interest" and the permit condition exacted by the city.  *Id.* at 837.

14       *Dolan* refined the *Nollan* "essential nexus" test by adding a "rough proportionality"

15   standard.  *Dolan* concerned the validity of two land exactions where the City of Tigard required

16   the land owner, Mrs. Dolan, to set aside a portion of her land as a publically accessible greenway

17   and a pedestrian path in exchange for issuing a permit allowing her to enlarge her hardware store

18   and parking lot.  512 U.S. at 379-82.  The Supreme Court held that the City of Tigard's exactions

19   were not constitutional because the City's demands were not roughly proportional to the negative

20   impacts created by the expansion of Mrs. Dolan's store and parking lot.  *Id.* at 394.

21       Plaintiffs argue that the stormwater upgrade lacks the essential nexus and rough

22   proportionality required by *Nollan/Dolan*.  Dkt. 42-1, at 14.  The City responds by arguing that

23   the *Nollan/Dolan* test applies only to land dedications and does not apply to purely monetary

24   exactions like the one at issue here.  Dkt. 45-1, at 12.

25       The Supreme Court has held that where the government regulation "neither physically

26   invades" the property nor denies the owners "all economically viable use of their property" the

27   *Nollan/Dolan* analysis framework does not necessarily apply.  *Garneau v. City of Seattle*, 147

28   F.3d 802,807-08 (1998).  Before reaching the question of the proper test, the "first inquiry . . .

ORDER
Page 11

1   asks only whether government imposition of the exaction would be a taking." *Id.* at 809.  The

2   Court analyzed the distinction in *Garneau*:

3           The Court had no trouble in either [*Nollan* or *Dolan*] finding that government
            imposition of the exaction would amount to a taking. In both cases the
4           government demanded permanent physical occupation of some portion of the
            applicant's land. Courts have generally found that where government action
5           leads to the physical invasion of private property, it constitutes a per se taking.
            Similarly, if the government action denies the owner of all economically viable
6           use of his property, it is also a per se taking.  By contrast, in non-categorical
            takings cases, courts must undertake complex factual assessments of the
7           purposes and economic effects of government actions.   Because of the
            difference in the Court's approach, much turns on the classification of the
8           government's action.

9

10  *Id.* (internal citations omitted).  Therefore, the Plaintiffs must show that the City's imposition of

11  the pipe upgrade constituted a taking.  *Id.* at 812.

12          Here, the six to twelve inch pipe upgrade regulation was not a physical invasion of private

13  property, nor did it deny the owner of all economically viable use of the property.  In non-

14  categorical regulatory takings cases, such as the one before the Court, the proper inquiry is "an ad

15  hoc, factual inquiry to determine whether the government regulation goes too far."  *Id.* at 807.

16

17  The most important factors are the economic impact of the regulation on the claimant and the

18  extent to which the regulation has interfered with distinct investment-backed expectations.  *Id.*  In

19  addition, "the character of the governmental action . . . may be relevant in discerning whether a

20  taking has occurred."  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (citing *Penn*

21  *Transp. Co. v. New York City*, 438 U.S. 104 (1978)) (internal citations omitted).

22

23          Here, the Plaintiffs' fail to show that the economic impact is large; at most, the Plaintiffs'

24  costs equal $42,372.02 ($50,872.02, the sum of the engineering services, storm drain

25  construction, soil import and export, and sales tax; minus $8,500, the stipulated amount of the fee

26  waiver).  Dkt. 53-1, at 67-70; Dkt. 7-11, at 25.  Plaintiffs' overall project entailed demolishing an

27  existing structure and replacing it with a Subway shop valued at $100,000.  Dkt. 48-3, at 104.

28

1   Plaintiffs have failed to provide reliable evidence in the record, after more than eight years of

2   litigation, of how much a twelve inch pipe upgrade would have cost.  The record contains only

3   the Plaintiffs' bill for the six to twenty-four inch pipe upgrade (Dkts. 53-1, at 67, 70) and a City

4   engineer's estimate of the twelve to twenty-four inch pipe upgrade cost (Dkt. 48-1, at 5).

5   Moreover, Plaintiffs have failed to show that the regulation that developers upgrade stormwater

6
    pipes to twelve inches (where needed) interfered with "distinct investment-backed expectations."
7
    The Plaintiffs' shop has been fully permitted and operation since January of 1997.  Dkt. 48-1, at 5.
8
9          The character of the government action also indicates that no "takings" occurred.  There is

10  no evidence in the record that the City misapplied its regulation requiring a twelve inch pipe, and

11  Plaintiffs fail to produce any evidence showing that the City has not required any other land owner

12  to upgrade the pipe system before granting a permit.
13
14         Plaintiffs have shown no diminished rights in the uses of their land and Plaintiffs' have not

15  shown that the commercial use of the parcel has been economically impacted by the requirement

16  to install the twelve inch pipe. Dkt. 48-1, at 5; *see Penn Cent. Transp.*, 483 U.S. at 104 (holding

17  that the law did not affect a taking where the law did not interfere with the owners' present use of

18  the property or prevent them from realizing a reasonable rate of return on their investment).
19
           "[A] party challenging governmental action as an unconstitutional taking bears a
20
    substantial burden."  *Eastern Enterprises v. Apfel*, 524 U.S. 498, 523 (1998).  Plaintiffs fail to
21
22  meet that burden.  Therefore, summary judgment in favor of the City as to the six to twelve inch

23  pipe upgrade should be granted, and summary judgment for the Plaintiff should be denied.[8]

24                 2.     *Twelve to Twenty-Four Inch Upgrade*

25         The twelve to twenty-four inch upgrade has been mis-characterized by both sides.
26

27
    ─────────────────
28         [8]  Plaintiffs also argue that the stormwater exaction imposed on them was not a tax.  Dkt. 42-1, at 21.
    This argument is not relevant to this action.

ORDER
Page 13

Plaintiffs' attempt to characterize the twelve to twenty-four inch pipe upgrade as a mandatory condition necessary to obtain a building permit is erroneous. The City's letter clearly indicates the fact that the obligation is not the Plaintiffs', but the City's, and the Stormwater Comprehensive Plan adopted by the City establishes that a twenty-four inch pipe was needed at Lewis Avenue and Main Street to serve the greater area around the Plaintiffs' property. Dkt. 48-2, at 96; Dkt. 48-2, at 130. The City, pursuant to Sumner Municipal Code § 13.48.610, offered to pay for the difference in cost between installation of the twelve inch pipe and twenty-four inch pipe by waiving certain fees and charges. Dkt. 53-1, at 13, 66. The City's letter indicates that if the offer was acceptable, the Plaintiffs should proceed with their plan. Dkt. 53-1, at 66. Plaintiffs did not respond to the City's letter, but instead installed the twenty-four inch pipe. Dkt. 51-3, at 2. The City, accordingly, did not impose the fees upon the Plaintiffs. Dkt. 7-11, at 25. Therefore, it appears based on the record that the City made an offer, which the Plaintiffs accepted by performance.

Because Plaintiffs have failed to support their burden showing that the City's actions constituted a taking, summary judgment should be granted in favor of the City. Plaintiffs' motion for summary judgment as to this claim should be denied and Defendant's motion for summary judgment as to this claim should be granted. Further, because Plaintiffs have failed to show that the City of Sumner violated their federally protected rights, Plaintiffs' motion for an award of attorney fees under 42 U.S.C. § 1988 should be denied.

## D.    ARTICLE I, § 16 WASHINGTON STATE CONSTITUTION CLAIM

The Washington State Constitution, like the Fifth Amendment, prohibits the government from taking property from a private owner without paying just compensation, and in some cases provides greater protection than the Fifth Amendment. *Eggleston v. Pierce County*, 148 Wash. 2d 760, 766 (2003). The Washington State Constitution provides in pertinent part the following:

Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across lands of others for agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having been first made.

Wash. Const. art. I, § 16. The Washington Supreme Court has established a two-part test applicable to all claims of regulatory takings of property under Article 1, section 16. The "inquiry asks first whether the challenged regulation protects the public interest in health, safety, the environment or fiscal integrity." *Robinson v. City of Seattle*, 119 Wash. 2d 34, 49 (1992). The second inquiry is "whether the regulation destroys or derogates any fundamental attribute of ownership: the rights to posses exclusively, to exclude others, and to dispose of property." *Id.* at 50. If either inquiry is satisfied, then that regulation is susceptible to a constitutional taking challenge. *Id.* If not, then the regulation is subjected to a *Penn Central* type analysis, where the Court considers the economic impact of the property, the regulation's interference with investment-backed expectations, and the character of the government's action. *Id.* at 51 (citing *Presbytery of Seattle v. King County*, 114 Wn.2d 320, 335-36 (1990)).

The City argues that the Plaintiffs' state law takings claim fails because no Washington court has held a utility upgrade obligation to be an unconstitutional taking and because Plaintiffs' claims fail to meet the threshold test set out in *Robinson*. Dkt. 45-1, at 16-17. Plaintiffs respond that the non-existence of such a case does not mean the Plaintiffs have no claim; regardless, "a development exaction becomes a taking if it exceeds what is reasonably necessary to mitigate the direct negative impacts of the development." Dkt. 50-1, at 17 (citing *Benchmark Land Co. v. City of Battle Ground*, 103 Wn. App. 721 (2000)).

Here, Plaintiffs have failed to show that the regulation does not protect the public interest or that the regulation destroys any fundamental attribute of ownership. The record shows that the City of Sumner had experienced severe flooding in the early 1990's, prompting the local

1   government to pass numerous stormwater drainage ordinances.  Dkt. 47-1, at 121-40.  Also, the

2   pipe upgrade did not destroy a fundamental aspect of Plaintiffs' property ownership; Plaintiffs still

3   enjoy the full use of their land.  Last, even if the threshold was met, the same *Penn Central*

4   analysis as applied to the Fifth Amendment claims apply here.[9]

5        Therefore, the pipe upgrade regulation imposed by the City of Sumner requiring Plaintiffs

6   to install a twelve inch pipe does not effect a taking under the Washington Constitution.  In

7   addition, the twelve to twenty-four inch pipe upgrade was an exchange made for consideration, as

8   discussed above, and also does not amount to a taking under the Washington Constitution.  To

9   this extent, summary judgment for the Plaintiffs should be denied, and summary judgment for the

10  City should be granted.

11  

12      **E.      REVISED CODE OF WASHINGTON § 82.02.020**

13      RCW § 82.02.020 prohibits, with certain exceptions, the imposition of "any tax, fee, or

14  charge, either direct or indirect, on the construction or reconstruction of residential buildings [or]

15  commercial buildings."  The statutory exceptions, found in RCW §§ 82.02.050-.090, do not apply

16  in this case.

17      The City claims that Plaintiffs are statutorily prevented from raising a claim under RCW §

18  82.02.020 because Plaintiffs failed to appeal the decision under the Land Use Petition Act

19  ("LUPA").  RCW 36.70C.005-.900.  "In order to have standing to bring a land use petition under

20  LUPA, the petitioner must have exhausted his or her administrative remedies . . . . [and] filed for

21  judicial review . . . within 21 days of the issuance of the land use decision."  *James v. County of*

22  *Kitsap*, 154 Wash. 2d 574, 583 (2005) (citing RCW 36.70C.040(3), .060(2)(d)).

23  

24  

25  _____

26      [9] *See also, Buttnick v. City of Seattle*, 105 Wn.2d 857 (1986) (holding that the city's requirement that a
    landowner in a historic preservation district replace a parapet on her building did not amount to an
27  unconstitutional taking given the cost of the replacement and the market value and income producing potential of
    the building); *Ackerly Commc'ns v. City of Seattle*, 92 Wn.2d 905,919-20 (1979) (holding that an ordinance
28  requiring the removal of signboards along the highways without compensation was not an unconstitutional taking).

ORDER
Page 16

Plaintiffs respond that their case fits within one of the exceptions to LUPA.  Dkt. 50-1, at 23.  RCW 36.70C.030(1)(c) expressly exempts claims for "monetary damages or compensation" from the procedures, standards, and deadlines set forth in LUPA.  Therefore, Plaintiffs argue, their claim is subject to a three year statute of limitations, which they satisfy.  Dkt. 50-1, at 23.

The Washington Supreme Court recently addressed this issue, holding that the imposition of impact fees as a condition on the issuance of a building permit is a "land use decision" under LUPA and is not reviewable unless a party timely challenges that decision within twenty-one days of its issuance.  *James*, 154 Wn.2d at 586-87.  The dissent argued that a challenge to the government's decision to issue or withhold a permit is distinct from a challenge to the imposition of illegal fees or taxes.  *Id.* at 591-94.   However, the majority expressly found that the government's decision to exact a fee as a condition for granting the developer's building permit constituted a land use decision and not a revenue decision.  *Id.* at 583-84.

Accordingly, Plaintiffs claim of a violation of RCW § 82.02.020 is barred under LUPA.  To the extent Plaintiffs move for summary judgment on their RCW § 82.02.020 claim, summary judgment should be denied.  To the extent the City move for summary judgment on this claim, summary judgment should be granted.

F.      **REVISED CODE OF WASHINGTON § 35.92.025**

RCW § 35.92.025 authorizes cities and towns to charge property owners seeking to connect to the water or sewerage system a reasonable connection fee as a condition to granting the right to connect, so long as the fee represented the property owner's equable share of the cost of the system.

This statute does not apply to this action.  The Plaintiffs were already connected to the drainage system.  Dkt. 53-1, at 71.  The pipe upgrade does not appear to be a "connection" fee within the meaning of the statute.  Moreover, Plaintiffs fail to brief this Court on the issue and do

not provide any support for their claim that the City violated this statute.  See Dkt. 50-1; Dkt. 51-1.

To the extent Plaintiffs moves for summary judgment on this claim, summary judgment should be denied.  To the extent the City moves for summary judgment on this claim, summary judgment should be granted.

### III.   ORDER

Therefore, it is hereby **ORDERED** that

(1)    Plaintiffs' Motion for Partial Summary Judgment on Federal Takings Issues (Dkt. 42-1) is **DENIED**;

(2)    Defendant's Motion for Summary Judgment on All Remaining Claims (Dkt. 45-1) is **GRANTED** and the action is **DISMISSED WITH PREJUDICE**; and

(3)    The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 16th day of February, 2007.


RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER
Page 18